[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-11794

_____

METROPOLITAN LIFE INSURANCE COMPANY,

Plaintiff-Counter Defendant-Appellee,

*versus*

M.D. FRED A. LIEBOWITZ,

Defendant-Counter Claimant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:20-cv-00276-JES-MRM

_____

2                    Opinion of the Court                    22-11794

Before GRANT, TJOFLAT, Circuit Judges, and HUFFAKER,[*] District Judge.

PER CURIAM:

Dr. Fred A. Liebowitz appealed the district court's denial of his motion for judgment on the pleadings (Doc. 59), its denial of his motion for summary judgment and partial grant of summary judgment for Metropolitan Life Insurance Company (Doc. 103), its opinion and order entering judgment for Metropolitan Life after trial (Doc. 121), its judgment (Doc. 122), and its amended judgment (Doc. 130).

After careful review of the record and briefs, and with the benefit of oral argument, we **AFFIRM**. The district court's well-reasoned and thorough opinions and orders are appended.

---

[*] Honorable R. Austin Huffaker, United States District Judge for the Middle District of Alabama, sitting by designation.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

METROPOLITAN LIFE INSURANCE
COMPANY,

      Plaintiff,

v.                        Case No:  2:20-cv-276-JES-MRM

FRED A. LIEBOWITZ,

      Defendant.

_____

**OPINION AND ORDER**

This matter comes before the Court on review of defendant's Motion for Judgment on the Pleadings (Doc. #55) filed on May 14, 2021.  Plaintiff filed an Opposition (Doc. #57) on May 28, 2021. For the reasons set forth below, the motion is denied.

**I.**

The Court previously described the factual and procedural history of this case as follows:

> Plaintiff Metropolitan Life Insurance Company (plaintiff or MetLife) initiated this matter by filing a one-count Complaint against defendant Fred A. Liebowitz (defendant or Dr. Liebowitz). (Doc. #1.) The Complaint alleges that Dr. Liebowitz is a pain management physician who filed an application with MetLife for a disability insurance policy in January 2015. (Id. ¶ 5.) MetLife approved Dr. Liebowitz for coverage and issued him a disability policy (the Policy). (Id. ¶ 6.)

> The Complaint alleges that in December 2018 Dr. Liebowitz submitted a claim under the Policy for an ankle injury. (Id. ¶ 15.) During its investigation of this

claim, MetLife discovered what it believes to be false information or omissions in the application filed by Dr. Liebowitz regarding his financial, occupational, and professional status. (Id. ¶¶ 10-12, 15.) Specifically, the Complaint alleges Dr. Liebowitz failed to advise MetLife that he was the subject of multiple Florida Department of Health (DOH) investigations for improperly prescribing narcotics to patients. (Id. ¶ 12.) These investigations would subsequently lead to the DOH issuing a reprimand against Dr. Liebowitz's license, imposing a fine and costs, and restricting Dr. Liebowitz from prescribing controlled substances. (Id. ¶ 14.)

In response to learning these facts, MetLife returned all premiums paid by Dr. Liebowitz with respect to the Policy, with interest. (Id. ¶ 22.) Dr. Liebowitz rejected the tendered refund. (Id.)

The Complaint seeks "rescission of the Policy pursuant to Fla. Stat. § 627.409 and Florida law." (Id. ¶ 9.) According to the Complaint, MetLife (1) justifiably relied on Dr. Liebowitz's fraudulent misrepresentations and omission of material facts in the application, and (2) would not have issued the Policy had it known the true facts. (Id. ¶¶ 17, 18.) The Complaint asserts the Policy "is *void ab initio* under Florida common law and pursuant to Fla. Stat. § 627.409." (Id. ¶ 19.) Federal jurisdiction is premised on diversity of citizenship pursuant to 28 U.S.C. § 1332. (Id. ¶ 1.)

Dr. Liebowitz filed a Second Amended Answer, Affirmative Defenses and Counterclaim. (Doc. #32). Dr. Liebowitz's two-count Counterclaim seeks declaratory relief as to whether, among other things, MetLife had the right to unilaterally rescind the Policy and whether MetLife must honor the Policy by payment of disability benefits. (Id. ¶¶ 1, 27.) Dr. Liebowitz seeks a declaration that "the disability policy issued to [him] by MetLife to be in full force and effect." (Id. at ¶ 27.)[1]

---

[1] Dr. Liebowitz has since filed a Third Amended Answer, Affirmative Defenses, and Counterclaim (Doc. #58), but the differences between second and third versions are negligible.

2

(Doc. #54, pp. 1-3 (footnote omitted)).

Dr. Liebowitz previously filed a motion to dismiss for lack of subject matter jurisdiction. (Doc. #38.) Dr. Liebowitz argued that because MetLife had previously unilaterally rescinded the Policy, the Court lacked subject matter jurisdiction over the Complaint's rescission claim. (Id. pp. 3-10.) The Court rejected the argument, finding that under Florida law "MetLife must allege that it rescinded the Policy to state a rescission claim." (Doc. #54, p. 7.)

Dr. Liebowitz has now filed the motion for judgment on the pleadings currently before the Court. (Doc. #55.) In it, Dr. Liebowitz argues that the Complaint fails to make factual allegations necessary to plead a recission claim, and therefore the Complaint is fatally defective. (Id. p. 4.) Because the pleadings are closed, Dr. Liebowitz requests the Court enter judgment in his favor on MetLife's rescission claim. (Id. p. 5.)

## II.

### A. Legal Standard

The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially

3

noticed facts." Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998) (citations omitted). When reviewing a motion for judgment on the pleadings, the court must view the facts in a light most favorable to the nonmoving party. Id. A judgment on the pleadings can be granted only if the nonmoving party can prove no set of facts which would allow it to prevail. Palmer & Cay, Inc. v. Marsh & McLennan Cos., Inc., 404 F.3d 1297, 1303 (11th Cir. 2005) (citations omitted).

**B. Analysis**

Under Florida law, a plaintiff must adequately plead six facts in order to state a cause of action for recission of a contract:

> (1) [t]he character or relationship of the parties; (2) [t]he making of the contract; (3) [t]he existence of fraud, mutual mistake, false representations, impossibility of performance, or other ground for rescission or cancellation; (4) [t]hat the party seeking rescission has rescinded the contract and notified the other party to the contract of such rescission; (5) [i]f the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible; [and] (6) [l]astly, that the moving party has no adequate remedy at law.

Barber v. Am.'s Wholesale Lender, 542 F. App'x 832, 836 (11th Cir. 2013) (quoting Billian v. Mobile Corp., 710 So.2d 984, 991 (Fla. 4th DCA 1998)). The Florida Supreme Court has further stated that a party seeking recission must

> allege facts which show that upon discovery of the mistake he, with reasonable promptness, denied the contract as binding upon him and that thereafter he was consistent in his course of disavowal of it. For if,

4

after acquiring knowledge of the mistake, he either remains silent when he should speak or in any manner recognizes the contract as binding upon him, ratifies or accepts the benefits thereof, he will be held to have waived his right to rescind.

Rood Co. v. Bd. of Pub. Instruction of Dade Cty., 102 So. 2d 139, 141 (Fla. 1958).

In his motion, Dr. Liebowitz argues that the Complaint fails to allege MetLife (1) rescinded the Policy and (2) did so promptly after discovery of the grounds justifying rescission. (Doc. #55, p. 4.) Dr. Liebowitz argues this failure renders the Complaint fatally deficient and justifies judgment in his favor. (Id. pp. 4-5.) The Court disagrees.

While Dr. Liebowitz is correct that the Complaint does not specifically allege MetLife rescinded the policy promptly after discovery of Dr. Liebowitz's alleged misrepresentations, that is the inference when viewing the allegations in the light most favorable to MetLife. Hawthorne, 140 F.3d at 1370. The Complaint alleges MetLife discovered Dr. Liebowitz's misrepresentations while investigating his disability claim, and that prior to filing the Complaint it tendered a check to Dr. Liebowitz refunding all premiums he had paid with respect to the Policy. (Doc. #1, ¶¶ 15, 22.) It also alleges MetLife performed all conditions precedent to filing suit. (Id. ¶ 8); see also Fed. R. Civ. P. 9(c) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed.").

5

The Court finds such allegations sufficient to infer MetLife rescinded the policy promptly after discovery of Dr. Liebowitz's misrepresentations, and therefore the Complaint sufficiently alleges facts to state a claim for rescission. See Lake v. Howell, 2014 WL 12695693, *4 (N.D. Ga. June 16, 2014) (recognizing that "technically" defendant may be correct that plaintiff failed to allege specific facts, but nonetheless denying motion for judgment on the pleadings because of the reasonable inferences arising from the complaint's allegations).[2]

Accordingly, it is now

**ORDERED:**

Defendant's Motion for Judgment on the Pleadings (Doc. #55) is **DENIED.**

---

[2] It is worth noting that there is no dispute among the parties that MetLife rescinded the Policy prior to filing the Complaint. Not only does Dr. Liebowitz admit MetLife attempted to refund the premiums, he has filed counterclaims challenging the appropriateness of MetLife's unilateral rescission. (Doc. #58, pp. 4, 12-30.) Dr. Liebowitz has also provided the Court with a copy of the letter MetLife sent informing him the Policy was rescinded. (Doc. #38-1, pp. 12-14.) The letter indicates MetLife confirmed the DOH investigations in June 2019 and rescinded the Policy in December 2019. (Id. pp. 12-13.) Whether this constitutes "reasonable promptness" is a question of fact beyond the scope of a motion for judgment on the pleadings. See E. Portland Cement Corp. v. F.L. Smidth Inc., 2009 WL 3010820, *5 (M.D. Fla. Sept. 16, 2009) (noting that whether "notice was given with reasonable promptness is generally a question of fact"); Orlando Nightclub Enters., Inc. v. James River Ins. Co., 2007 WL 4247875, *5 (M.D. Fla. Nov. 30, 2007) (noting that judgment on the pleadings would be inappropriate because of a question of fact).

**DONE AND ORDERED** at Fort Myers, Florida, this ___9th___ day of June, 2021.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

METROPOLITAN LIFE INSURANCE
COMPANY,

       Plaintiff,

v.                        Case No:  2:20-cv-276-JES-MRM

FRED A. LIEBOWITZ,

       Defendant.

_____

**OPINION AND ORDER**

This case comes before the Court on the parties' cross motions for summary judgment (Docs. ## 78, 80) filed on July 21, 2021. Each party filed Responses in opposition (Docs. ## 89, 90), and Replies. (Docs. ## 91, 93.)  As discussed below, the motions concern only issues relating to whether coverage exists under a certain insurance policy.  For the reasons set forth, defendant's motion for summary judgment is **DENIED** and plaintiff's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART.**

**I.**

The record establishes the following undisputed facts.[1]

_____

[1] "Both parties contend that the facts are essentially undisputed." (Doc. #97, p. 11.)  The Court, therefore, generally cites to the "Statement of Undisputed Issues of Fact" portion of the Joint Pretrial Statement (Doc. #97, pp. 6-11), supplemented as needed by compiled statements of the parties (Docs. #78, 80) and exhibits in the record.  MetLife's embedded motion to strike (Doc.

### A.    DOH Complaints and Investigations

Dr. Fred A. Liebowitz (plaintiff or Dr. Liebowitz) is a pain management physician in the Fort Myers, Florida area. (Doc. #97, ¶ 9(1)).  At all relevant times, his primary source of income was treating patients for pain and prescribing narcotics.  (Id. ¶ 9(3).)

By a letter dated May 10, 2010, Dr. Liebowitz was notified that the Florida Department of Health (DOH) was conducting an investigation of a complaint filed against him.  (Id. ¶ 9(10).)  Ultimately, in 2010 and 2011 the DOH filed and served Dr. Liebowitz with three separate Administrative Complaints (the "DOH Complaints") in connection with medical care he had provided.  (Id. ¶ 9(11).)  The DOH Complaints alleged that on many occasions Dr. Liebowitz improperly prescribed pain killers to patients, including one incident where a patient subsequently died from drug overdose.  (Doc. #80, ¶ 11.)  The DOH Complaints requested that the Board of Medicine impose penalties on Dr. Liebowitz, including revocation or suspension of his medical license, restrictions on his medical practice, fines, reprimands, probation, corrective action, and remedial education.  (Id. ¶ 12.)  When Dr. Liebowitz

---

#90, p. 1, fn.1.) is denied, and the Court declines MetLife's request to deem the motion "largely unopposed."  (Doc. #93, p. 2.)

was served with the DOH Complaints he signed a form disputing the facts and requesting a formal hearing.  (Doc. #78, ¶ 7.)

Dr. Liebowitz notified his malpractice insurance carrier of the DOH Complaints and was represented by William Whitney (Mr. Whitney), an attorney provided by this insurance carrier, throughout the DOH administrative process.  (Doc. #97, ¶ 12.)  Mr. Whitney kept Dr. Liebowitz apprised of significant developments in the DOH proceedings.  (Doc. #80, ¶¶ 14-16; Doc. #97, ¶ 13.) Dr. Liebowitz was an active participant with counsel and stayed current on matters related to the DOH Complaints because the proceedings were important to his medical practice and reputation.  (Doc. #80, ¶¶ 15-16, 20.)

In July 2014, the DOH provided Dr. Liebowitz with a proposed settlement offer which Dr. Liebowitz and Mr. Whitney discussed in detail.  (Id. ¶¶ 21-22.)  Around September 2014, Dr. Liebowitz hired a second attorney (Allan Grossman) with his own funds to provide a second review of his case and to evaluate the settlement offer.  (Id. ¶¶ 25-28.)  The proposed settlement agreement included permanent restrictions that would indefinitely prevent Dr. Liebowitz from practicing his specialty of pain management and prescribing narcotics. (Id. ¶ 23.)  The DOH offer was not accepted by Dr. Liebowitz.

3

**B.    Insurance Application and Policy Issuance**

On or about January 30, 2015, Dr. Liebowitz completed an application for a disability insurance policy with Metropolitan Life Insurance Company (defendant or MetLife) (the "Application"). (Doc. #97, ¶ 9(1).)  Dr. Liebowitz answered certain questions in the Application "to the best of [his] knowledge and belief," including the following two questions and answers pertinent to the current litigation:

> Question 5(i): Are you aware of any fact that could change your occupational status or financial stability? If YES, please give details below.
>
> Answer: No [box checked].
>
> ***
>
> Question 17: Have you EVER had a professional license suspended, revoked, or is such license under review or have you ever been disbarred? If YES, give details below.
>
> Answer: No [box checked].

(Id. ¶ 9(5).)  Dr. Liebowitz admits he did not disclose the pending DOH Complaints and investigations in the Application.  (Doc. #89, p. 2.)  MetLife made no investigation to determine the accuracy of the statements, but relied solely on the answers.  (Doc. #97, ¶ 9(8).)  MetLife subsequently approved Dr. Liebowitz for coverage based on the answers in his Application.  (Doc. #80, ¶ 4.)

MetLife processed Dr. Liebowitz's Application and issued a disability policy (the Policy) between April 16, 2015 and May 3,

4

2015.  (Doc. #97, ¶ 9(4).)  On May 3, 2015, the Policy was delivered to Dr. Liebowitz, who signed an Amendment to the Application which affirmed that "there [were] no facts or circumstances which would require a change in the answers in the application."  (Id. ¶ 9(7).) The Policy had an effective date of March 6, 2015.  (Id. ¶ 9(4).)

### C.    Resolution of the DOH Complaints

In 2018, the DOH amended the DOH Complaints, reducing the scope of the allegations.  (Doc. #80, ¶ 32.)  On September 11, 2018, Dr. Liebowitz entered into a settlement agreement with the DOH.  (Doc. #97, ¶ 9(15).)  A Final Order approving the settlement was entered by the Board of Medicine on December 18, 2018.  (Id.) Among other things, the Final Order issued a Reprimand against Dr. Liebowitz's medical license and restricted his ability to prescribe any controlled substance.  (Doc. #80, ¶ 39.)

### D.    Dr. Liebowitz's Insurance Claim and MetLife Rescission

Also on December 18, 2018, Dr. Liebowitz submitted initial claims forms to MetLife for disability benefits, stating his work had been limited since January 4, 2016 due to an ankle injury. (Doc. #80, ¶ 43 (citing Doc. #72-2, pp. 202-03).)[2]  MetLife spent about a year investigating Dr. Liebowitz's disability benefits

---

[2] Dr. Liebowitz more recently asserts that his disability commenced in July 2017 (Doc. #78, pp. 9, 16), and "disavows he was disabled within 2 years of the policy's issue or effective date." (Id. p. 15.)  Whether Dr. Liebowitz's disability commenced in January 2016 or July 2017 is immaterial to the coverage issue.

claim, which included review of his Application.  (Id. ¶¶ 44, 52.)

Following its investigation, MetLife sent Dr. Liebowitz, through

counsel, a Notice of Rescission dated December 30, 2019.  (Doc.

#97, ¶ 9(21).)   The Notice set forth the alleged material

misrepresentations made in his Application which were the basis

for rescission, and included a check representing premiums paid by

Dr. Liebowitz to date and interest.  (Id.)  Dr. Liebowitz disputed

MetLife's rescission and did not cash the check.  (Id. ¶ 21-22.)

### E.    Present Litigation

On April 15, 2020, MetLife filed a Complaint seeking a Court

order "rescinding the Policy, and declaring that Liebowitz has no

right, title, or interest in the Policy."  (Doc. #1, Prayer for

Relief.)   Dr. Liebowitz, in turn, filed two interconnected

counterclaims against MetLife seeking reinstatement of the Policy

and disability benefits under the Policy.  (Doc. #58.)

With the approval of the Court (Docs. ## 43-44), discovery

and trial have been bifurcated into two phases.  The first phase

will determine the "coverage" issue, with a bench trial if

necessary. (Doc. #44.)  If there is coverage, a second phase will

determine what benefits are due to Dr. Liebowitz, i.e., the

"damages" issue, with a jury trial if necessary.  (Id.)  The cross-

motions for summary judgment at issue in this Opinion and Order

concern the coverage issue, only.  (Docs. ## 78, 80.)

II.

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198

7

F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)) (finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts.")).

Cross motions for summary judgment do not change the standard. See Am. Bankers Ins. Grp. v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005). Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another; and summary judgment is inappropriate if disputes remain as to material facts. Id.; United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984). The treatment of cross motions remains the same even when a case is set for a bench trial, except in limited circumstances where the parties, in effect, submit an agreed-upon statement of facts for a trial based on the written record. Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc., 830 F.3d 1242, 1253 (11th Cir. 2016) (quotation omitted).

**III.**

Florida law allows an insurance policy to be rescinded under certain circumstances. MetLife must adequately plead and ultimately prove six elements to establish a cause of action for rescission of its insurance contract:

> (1) [t]he character or relationship of the parties; (2) [t]he making of the contract; (3) [t]he existence of fraud, mutual mistake,

8

false representations, impossibility of performance, or other ground for rescission or cancellation; (4) [t]hat the party seeking rescission has rescinded the contract and notified the other party to the contract of such rescission; (5) [i]f the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible; [and] (6) [l]astly, that the moving party has no adequate remedy at law.

Billian v. Mobil Corp., 710 So.2d 984, 991 (Fla. 4th DCA 1998). In short, "Florida law ... gives an insurer the unilateral right to rescind its insurance policy on the basis of misrepresentation in the application of insurance." Moustafa v. Omega Ins. Co., 201 So. 3d 710, 714 (Fla. 4th DCA 2016) (citation omitted).

To rescind the Policy based on a misrepresentation, MetLife relies upon Fla. Stat. § 627.409(1), which provides:

> (1) Any statement or description made by or on behalf of an insured or annuitant in an application for an insurance policy or annuity contract, or in negotiations for a policy or contract, is a representation and not a warranty. Except as provided in subsection (3), a misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply:
>
> (a) The misrepresentation, omission, concealment, or statement is fraudulent or is material to the acceptance of the risk or to the hazard assumed by the insurer.
>
> (b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium

9

> rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

Under this statute, "misrepresentations, omissions, concealment of facts, and incorrect statements on an insurance application will not prevent a recovery under the policy unless they are either: (1) fraudulent; (2) material to the risk being assumed; or (3) the insurer in good faith either would not have issued the policy or would have done so only on different terms had the insurer known the true facts."  Certain Underwriters at Lloyd's London v. Jimenez, 197 So. 3d 597, 601 (Fla. 3d DCA 2016).

MetLife only relies upon the first portion of § 627.409(1)(a), asserting that Dr. Liebowitz's answers to the two questions in the Application were "fraudulent" misrepresentations or statements. (Doc. #80, pp. 18-19.)[3]  MetLife cites to the four elements of fraudulent misrepresentation set forth in Butler v. Yusem, 44 So. 3d 102, 105 (Fla. 2010): "As we have stated, there are four elements of fraudulent misrepresentation: '(1) a false statement

---

[3] The Policy contains a "Time Limit on Certain Defenses" provision, which provides: "After two years from the Effective Date of this policy, or any policy change or reinstatement, no misstatement, except fraudulent misstatements, made by You on the Application can be used to void this policy or such policy change or reinstatement, or to deny a claim under this policy or the policy change or reinstatement, for a Disability starting after the end of such two-year period." (Doc. #58-1, p. 13.)  The other alternatives in the statute are admittedly time-barred by the two-year provision.  (Doc. #80, pp. 17-19.)

concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation.'" (citation omitted). (Doc. #80, p. 19).  Dr. Liebowitz relies upon an earlier Florida Supreme Court case, Lance v. Wade, 457 So. 2d 1008 (Fla. 1984), setting forth the same four elements.  (Doc. #89, p. 3.)  Because proof of such fraud is difficult, "actual fraud is not the most common circumstance under which insurers avoid paying claims under insurance policies."  Mora v. Tower Hill Prime Ins. Co., 155 So. 3d 1224, 1227 (Fla. 2d DCA 2015).

**IV.**

The parties' summary judgment motions address coverage issues only and whether MetLife may rescind the Policy under Florida law, supra.  MetLife asserts that it was and is entitled to rescind the Policy based on Dr. Liebowitz's fraudulent misrepresentations, and therefore it is entitled to a judgment rescinding the Policy and precluding coverage for Dr. Liebowitz's disability claim.  (Docs. ## 80, 90, 93.)  Dr. Liebowitz, on the other hand, asserts that for various reasons MetLife did not properly rescind the Policy and cannot do so, and therefore he is entitled to coverage under the Policy.  (Docs. ## 78, 89, 91.)

11

### A.    Proof of Fraud

As discussed, one of the elements of MetLife's rescission claim requires that MetLife prove fraud by Dr. Liebowitz. MetLife's motion for summary judgment is primarily focused on this issue. (Doc. #80.)  Thus, the Court examines whether MetLife has satisfied the four fraud elements with the undisputed facts.

### (1)  False Statement Concerning Material Fact

MetLife must establish that "a false statement concerning a material fact" was made by Dr. Liebowitz.  Butler, 44 So. 3d at 105.  Such a false statement of fact must be about a past or existing fact, not a prediction of a future event.  Bailey v. Covington, 317 So. 3d 1223, 1228 (Fla. 3d DCA 2021).  Whether a statement is material is measured by an objective standard.  "The test of materiality is not that the company was influenced but that the facts, if truly stated, might reasonably have influenced the company in deciding whether it should reject or accept the risk."  Singer v. Nationwide Mut. Fire Ins. Co., 512 So. 2d 1125, 1128 (Fla. 4th DCA 1987) (citation omitted).  A "truthful response to a question based on his 'knowledge and belief' cannot be considered a misstatement or misrepresentation in an insurance policy rescission action."  William Penn Life Ins. Co. of New York v. Sands, 912 F.2d 1359, 1360 (11th Cir. 1990).

Dr. Liebowitz argues that he did not make any false statements about material facts because the Application questions are

12

ambiguous, call for a prediction and not a fact, and he answered the ambiguous questions to the best of his knowledge and belief. (Doc. #78, pp. 18-25; Doc. #89, p. 4.)  Thus, the statements he made in response to the Application questions cannot be the basis of MetLife's proof of fraud, and he is entitled to summary judgment.  (Doc. #78, pp. 17-25.)[4]  The Court disagrees, and for the reasons set for the below, the answers to the two questions in Dr. Liebowitz's Application were both false and material as a matter of law.  Singer, 512 So. 2d at 1127.

It is certainly correct that an insurer may not deny coverage "if the alleged misrepresentation was in response to an ambiguous question. A question is ambiguous when it is susceptible to two reasonable interpretations, one in which a negative response would be correct and one in which an affirmative response would be correct."  Mora, 155 So. 3d at 1228 (quoting Mercury Ins. Co. v. Markham, 36 So. 3d 730, 733 (Fla. 1st DCA 2010)). The inquiry is whether an objectively reasonable person, in the applicant's situation, "could truthfully answer the question in either the affirmative or the negative."  Id.  Whether a question in an insurance application is ambiguous is question of law.  Jimenez, 197 So. 3d at 600.

---

[4] Dr. Liebowitz asserts this same position as part of his Second and Third Affirmative Defenses, discussed infra.  (Doc. #58, pp. 5-7.)

13

**(a)    Question 5(i).**

Question 5(i) asked, "Are you aware of any fact that could change your occupational status or financial stability?"   (Doc. #58-1, p. 18.)  Dr. Liebowitz answered, "No."  (Id.)  Dr. Liebowitz contends the question is ambiguous because a medical license investigation does not prove the existence of any actual "fact" that could change his occupational status or financial stability. (Doc. #78, p. 19.)  Dr. Liebowitz asserts that this question simply asked him to predict what will happen to his license, rather than to state an existing fact.   (Id.)

The Court finds that this question is not ambiguous and does concern a fact, not a prediction.  At the time Dr. Liebowitz filled out his Application, it was a fact that he was the subject of three active and pending DOH Complaints regarding the medical care he had provided to patients.  The DOH Complaints sought revocation of Dr. Liebowitz's license, which would preclude him from practicing medicine, his career of nearly 30 years.  Dr. Liebowitz conceded during his deposition that if the DOH found him guilty his license could be revoked, and that the DOH had been seeking to have his medical license revoked.  (Doc. #80,_ ¶¶ 29, 36.)  Nothing in the question called upon the applicant to evaluate the merits of the DOH Complaints or predict their success.  As Dr. Liebowitz knew, the investigation of the DOH was pending and "could" change both his occupational status and his financial stability.   An

14

objectively reasonable person in Dr. Liebowitz's situation could only truthfully answer Question 5(i) in the affirmative because, as Dr. Liebowitz knew, the DOH proceedings were in fact pending and could change his occupational status and financial stability.

### (b) Question 17

Question 17 asked, "Have you EVER had a professional license suspended, revoked, or is such license under review or have you ever been disbarred?" (Doc. #58-1, p. 22.) Dr. Liebowitz answered, "No." (Id.) Dr. Liebowitz argues that the "under review" portion is ambiguous because "under review," "in the context of an administrative proceeding to discipline a professional license holder," "really has no meaning." (Doc. #78, p. 24.)[5]

The Court finds that this question is not ambiguous and does concern a fact. The pertinent portion of the question asks whether Dr. Liebowitz's professional license is "under review." Dr. Liebowitz's pending and active DOH proceedings included review of the medical care he had provided and sought revocation of his medical license, among other punishments. Dr. Liebowitz had two attorneys reviewing his case and a proposed settlement had been offered. Dr. Liebowitz was actively aware of and participating in

---

[5] Dr. Liebowitz supported this argument with expert testimony. That expert evidence was excluded by Court Order. (Doc. #94).

15

the proceedings.  His medical license was clearly "under review" at the time of the Application.  Under these circumstances, an objectively reasonable person in Dr. Liebowitz's situation could only truthfully answer Question 17 in the affirmative.

Therefore, the Court finds that the material undisputed evidence shows that Dr. Liebowitz made false statements concerning material facts when answering these two unambiguous Application questions.  MetLife has satisfied the first fraud element.  Dr. Liebowitz's request for summary judgment based on ambiguous questions (Doc. #78, pp. 17-25) is denied.

### (2)  Knowledge of Falsity

MetLife must next establish that the material undisputed facts show Dr. Liebowitz's knowledge that the representations were false.  Butler, 44 So. 3d at 105.  MetLife has done so.

Dr. Liebowitz argues that he answered the questions "to the best of his knowledge and belief," suggesting he did not knowingly answer falsely.  (E.g., Doc. #78, p. 18-19; Doc. #91, p. 6-7.)  However, Dr. Liebowitz's "belief" in the truthfulness of his answers cannot contradict actual knowledge:

> The twin qualifiers of knowledge and belief require that knowledge not defy belief.  What the applicant in fact believed to be true is the determining factor in judging the truth or falsity of his answer, but only so far as that belief is not clearly contradicted by the factual knowledge on which it is based.  In such event, a court may properly find a statement false as a matter of law, however

16

sincerely it may be believed.  To conclude otherwise would be to place insurance companies at the mercy of those capable of the most invincible self-deception — persons who having witnessed the Apollo landings, still believe the moon is made of cheese.

Casamassina v. U.S. Life Ins. Co. in City of New York, 958 So. 2d 1093, 1101 (Fla. 4th DCA 2007) (quoting Sands, 912 F.2d at 1365).

It is undisputed that Dr. Liebowitz knew of the DOH Complaints and the investigation at the time he completed the Application. Dr. Liebowitz admits this knowledge.  The Court has also found that the answer to each question was a false statement of fact. MetLife has satisfied the second fraud element.

### (3)  Intent to Induce Reliance

MetLife must next demonstrate that Dr. Liebowitz had the intent to deceive MetLife into providing disability insurance coverage.  Butler, 44 So. 3d at 105.  "A false statement in the abstract, even if knowingly made, does not constitute fraud; indeed, what makes a false statement fraudulent is the declarant's intent that others rely upon it." Philip Morris USA Inc. v. Principe, No. 3D20-875, 2021 WL 4302370, at *6 (Fla. 3d DCA Sept. 22, 2021) (citing Butler, 44 So. 3d at 105).  This element is often established by circumstantial evidence.  Glob. Quest, LLC v. Horizon Yachts, Inc., 849 F.3d 1022, 1030 (11th Cir. 2017) (citations omitted) ("elements of fraud—particularly intent and

17

knowledge—may be, and often are, proven by circumstantial evidence").

MetLife characterizes the evidence of intent in this case as "overwhelming." (Doc. #80, pp. 20-22.) MetLife cites circumstantial evidence, including the pending and active DOH Complaints, the timing of settlement negotiations of those DOH Complaints, and Dr. Liebowitz's actions at that time. (Doc. #80.) Conversely, Dr. Liebowitz consistently maintains he believed his answers to be truthful and had he no intent to induce MetLife to provide him coverage through false statements, citing his own declaration in support. (Doc. #74-1.) Dr. Liebowitz's Second and Third Affirmative Defenses also assert that Dr. Liebowitz answered the Application questions based on his "reasonable interpretation" of the questions, indicating he had no intent to deceive MetLife. (Doc. #58, pp. 5-7.)

In fraud cases, summary judgment "is rarely proper as the issue so frequently turns on the axis of the circumstances surrounding the complete transaction, including circumstantial evidence of intent and knowledge." Glob. Quest, 849 F.3d at 1029. When viewing the evidence in light most favorable to Dr. Liebowitz as the nonmoving party on MetLife's motion, a reasonable factfinder could determine that Dr. Liebowitz lacked the intent to induce MetLife's reliance when falsely answering the Application

18

questions.[6] <u>Travelers Cas. & Sur. Co.</u>, 2014 WL 5325745, at *6 ("If this Court finds the questions unambiguous, the question of whether [the applicant] gave his responses with the intent to deceive must be decided by [the factfinder].")  A dispute of fact remains, and MetLife is not entitled to summary judgment on the third fraud element.

### (4)  Consequent Injury

Finally, MetLife must establish that the material undisputed facts prove that MetLife suffered a consequent injury when acting in reliance on Dr. Liebowitz's misrepresentations.  <u>Butler</u>, 44 So. 3d at 105.  This element is clearly established, since the uncontradicted evidence is that MetLife would not have issued the Policy if Dr. Liebowitz had disclosed the DOH Complaints and investigations.  MetLife has satisfied the fourth fraud element.

In sum, MetLife is entitled to partial summary judgment as to the first, second, and fourth components of its fraud claim, but not the third component.

---

[6] Although, the Court is the factfinder on the coverage issue, a district court should only grant summary judgment on cases slated for a bench trial "when there are neither issues of credibility nor controversies with respect to the substance of the proposed testimony," because a "trial on the merits would reveal no additional data."  <u>Fla. Int'l Univ. Bd.</u>, 830 F.3d at 1252. (quotation omitted).  At a minimum, there are clearly issues of Dr. Liebowitz's credibility to consider.

B.    Promptness of Rescission

Another element of MetLife's rescission claim, distinct from the fraud elements, is "[t]hat the party seeking rescission has rescinded the contract and notified the other party to the contract of such rescission." Billian, 710 So.2d at 991. Dr. Liebowitz argues that MetLife cannot now actually rescind the Policy because MetLife did not seek to rescind the Policy with reasonable promptness. (Doc. #89, pp. 7-16, 20.) Therefore, according to Dr. Liebowitz, MetLife waived any right to rescind the Policy, MetLife's motion should be denied, and Dr. Liebowitz's motion is due to be granted. (Id.)

As the Florida Supreme Court has stated:

> [W]hen an insurer has knowledge of the existence of facts justifying a forfeiture of the policy, any unequivocal act which recognizes the continued existence of the policy or which is wholly inconsistent with a forfeiture, will constitute a waiver thereof. While, ordinarily, the insurer is not deemed to have waived its rights unless it is shown that it has acted with the full knowledge of the facts, the intention to waive such rights may be inferred from a deliberate disregard of information sufficient to excite attention and call for inquiry as to the existence of facts by reason of which a forfeiture could be declared.

Johnson v. Life Ins. Co. of Ga., 52 So. 2d 813, 815 (Fla. 1951). "An insurer may impliedly waive its ability to rescind the policy and deny recovery, however, if the insurer knows or has reason to know of the misrepresentation but continues to accept premium

20

payments or otherwise lead the insured to believe that he or she is still covered under the policy." Girard v. Mid-W. Nat'l Life Ins. Co. of Tennessee, No. 05-61506-CIV, 2005 WL 8155381, at *4 (S.D. Fla. Dec. 7, 2005).  On the other hand, "[a]n insurer may take a reasonable amount of time to investigate the facts justifying rescission, though." Girard, 2005 WL 8155381, at *3.

MetLife first argues that Dr. Liebowitz cannot argue that MetLife's lack of promptness constituted waiver because Dr. Liebowitz did not plead waiver as an affirmative defense.  (Doc. #93, pp. 4-5.)  But Dr. Liebowitz was not required to do so. E.g., Barber v. Am.'s Wholesale Lender, 542 F. App'x 832, 836 (11th Cir. 2013) (citing Rosique v. Windley Cove, Ltd., 542 So.2d 1014, 1016 (Fla. 3d DCA 1989)) ("The better view of Florida law is that plaintiffs must affirmatively allege in their complaint that they rejected the contract in a 'reasonably prompt fashion' after discovering a mistake.").  MetLife's promptness is part of MetLife's cause of action, which the Court has already found was sufficiently pled in the Complaint (Doc. #59 at 4-5) and which Dr. Liebowitz denied in his Answer (Doc. #58).  This is sufficient to raise the issue of waiver.

Turning to the merits of Dr. Liebowitz's waiver argument, it is undisputed that: (1) Dr. Liebowitz submitted his disability claim in late December 2018 asserting a disability that began on

21

January 4, 2016;[7] and (2) MetLife provided notice of its rescission on December 30, 2019.  (Doc. #80, ¶ 43; Doc. #97, ¶ 9(21).)

Dr. Liebowitz argues that MetLife unreasonably delayed rescission for over a year with knowledge of the DOH Complaints, and therefore MetLife waived any ability to rescind.  (Doc. #89, pp. 7-16.)  In support of this argument, Dr. Liebowitz states that as early as November 29, 2018, Theresa Woods, a MetLife claims specialist and the original handler of his disability claim, searched public licensing records which disclosed the DOH Complaints.  (Doc. #86-2, pp. 6-8; Doc. #87-3.)  On December 28, 2018, Woods conducted a similar search, printing a record disclosing the DOH complaints.  (Doc. #87-7.)  Woods did not share this information with anyone else at MetLife, and between November 2018 and May 2019, she never inquired about the DOH Complaints or Dr. Liebowitz's answers to the Application questions while investigating his claim.  (Doc. #89, pp. 10-11.)

MetLife responds that the circumstances surrounding rescission made the timing reasonable, and that it rescinded the Policy once it was in possession of all material facts to justify the rescission.  (Doc. #93, p. 6.)  MetLife cites Woods' testimony that she did not recall the application questions, and that Woods was focused on collecting Dr. Liebowitz's medical records given

---

⁷ See footnote 2.

22

his December 2018 disability claim for a January 2016 injury. (Id.) MetLife also states that in June 2019, Jamie Frederick, a senior claims advisor, took over Dr. Liebowitz's claim. (Id. p. 7.) MetLife then details Frederick's review of the DOH Complaints, including communications with the DOH, communications with Dr. Liebowitz, the refusal of premiums in November 2019, and the ultimate approval of rescission by the claims director. (Id.) MetLife argues that, under these circumstances, the time it took to investigate Dr. Liebowitz's back-dated disability claim and his Application before rescinding the Policy was reasonable.

Based on the foregoing, there are disputed issues of material fact concerning the promptness of MetLife's rescission. Woods' knowledge of the DOH Complaints for a year prior to rescission may or may not render the rescission untimely. E. Portland Cement Corp. v. F.L. Smidth Inc., 2009 WL 3010820, *6 (M.D. Fla. Sept. 16, 2009) ("whether the delay was reasonable is a question of fact that precludes summary judgment on the issue of rescission"). Accordingly, the reasonable promptness of MetLife's rescission remains a triable matter on the coverage issue.

### C.    Affirmative Defenses

While partial summary judgment for MetLife is appropriate on certain fraud elements of MetLife's rescission claim, as discussed supra, Dr. Liebowitz has asserted affirmative defenses which could preclude MetLife from prevailing. MetLife moves for summary

23

judgment on all affirmative defenses, so the Court discusses each in turn.  (Doc. #80, pp. 22-27.)

### (1)  Failure to State Claim

The First Affirmative Defense asserts that MetLife's Complaint fails to state a cause of action upon which relief may be granted.  (Doc. #58, p. 4.)  The Court has twice rejected this argument (Docs. #54, 59), and does so again.  Partial judgment will be entered against Dr. Liebowitz and in favor of MetLife as to the First Affirmative Defense because MetLife has stated a cause of action upon which relief may be granted.

### (2) and (3) Answering Ambiguous Questions

Dr. Liebowitz's Second and Third Affirmative Defenses assert that the Application questions were ambiguous and that Dr. Liebowitz cannot be found to have made misstatements on his Application because he answered the questions based on his reasonable interpretation of the questions.  (Doc. #58, pp. 5-7.) As discussed supra, the Court finds that the questions are not ambiguous.  However, a question of fact remains as to Dr. Liebowitz's intent.  The Second and Third Affirmative Defenses remain to the extent these defenses argue Dr. Liebowitz's intent to induce reliance through fraudulent misstatements.

### (4) and (5) Non-Conforming Policy Language

Dr. Liebowitz's Fourth and Fifth Affirmative Defenses assert that language in the Policy fails to conform with mandatory Florida

24

law, which requires that the Policy be modified in such a way which precludes rescission. (Doc. #58, pp. 7-8; see also Doc. #78, pp. 12-15.)  This argument is also asserted as part of Dr. Liebowitz's Counterclaim Count I and his motion for summary judgment.  (Doc. #58, p. 16; Doc. #78, pp. 12-15.)

Florida law requires that certain language be contained in insurance policies in Florida.  One such requirement, pertinent to this litigation, is Fla. Stat. § 627.607(1), which requires the following provision:

> "Time Limit on Certain Defenses: After 2 years **from the issue date,** only fraudulent misstatements in the application may be used to void the policy or deny any claim for loss incurred or disability starting after the 2-year period."

Fla. Stat. § 627.607(1) (emphasis added.)  However, Florida law then provides alternative language, which may be substituted by the insurer:

> (2) A policy may, in place of the provision set forth in subsection (1), include the following provision:
>
> "Incontestable:
>
> (a) Misstatements in the Application: After this policy **has been in force** for 2 years during the insured's lifetime (excluding any period during which the insured is disabled), the insurer cannot contest the statements in the application.
>
> (b) Preexisting Conditions: No claim for loss incurred or disability starting after 2 years from the issue date will be reduced or denied because a sickness or physical condition, not

25

> excluded by name or specific description before the date of loss, had existed before the effective date of coverage."

Fla. Stat. § 627.607(2) (emphasis added). The actual Policy language provides as follows:

> "Time Limit on Certain Defenses: After two years **from the Effective Date** of this policy, or any policy change or reinstatement, no misstatement, except fraudulent misstatements, made by You on the Application can be used to void this policy or such policy change or reinstatement, or to deny a claim under this policy or the policy change or reinstatement, for a Disability starting after the end of such two-year period."

(Doc. #58-1, p. 13) (emphasis added).

Dr. Liebowitz argues that the Policy language fails to match the mandatory statutory language because the Policy provision measures the two-year period from the "effective date" of the Policy instead of the "issue date." (Doc. #78, pp. 12-15.) Dr. Liebowitz contends that this deviation requires the current Policy provision to be stricken and the language of § 627.607(2) to be imported into the Policy.

The Court agrees that the "effective date" and "issue date" are not necessarily the same. For example, the "effective date" as defined by the Policy is March 6, 2015, while the "issue date" is not defined in the Policy but could arguably be as late as May 3, 2015 when the Policy was delivered to Dr. Liebowitz. But the Florida legislature has provided a remedy for such a situation,

26

which does not include striking one provision and importing other language.  A Florida statute provides:

> The contract may include the following provision:
>
> "Conformity with State Statutes: Any provision of this policy which, on its effective date, is in conflict with the statutes of the state in which the insured resides on such date is hereby amended to conform to the minimum requirements of such statutes."

Fla. Stat. § 627.627.  The Policy expressly includes this provision, stating:

> Any provision in this policy which, on the Effective Date, conflicts with the laws of the state in which You reside on that date is amended to meet the minimum requirements of such laws.

(Doc. #58-1, p. 13.).  See also Fla. Stat. § 627.418 (an otherwise valid policy not in compliance with the requirements of the code is not invalid but shall be construed and applied as if in full compliance).

Thus, the Policy is deemed to include the two-year provision required by Florida statute, and does not have non-conforming provisions.  Dr. Liebowitz's request for summary judgment (Doc. #78, pp. 12-15) based on the Policy's nonconforming language is denied.  MetLife is also entitled to partial judgment as to the Fourth and Fifth Affirmative Defenses.

27

### (6) and (7) Equitable Estoppel

Dr. Liebowitz's Sixth and Seventh Affirmative Defenses assert two theories of equitable estoppel. The Sixth Affirmative Defense argues that MetLife cannot rescind the Policy because the insurance agent who assisted Dr. Liebowitz with his application was allegedly employed by MetLife and did not advise him to disclose the DOH Complaints. (Doc. #58, p. 8.) MetLife seeks judgment on this defense because Dr. Liebowitz's own deposition testimony made clear that the insurance agent that helped him did not work for MetLife. (Doc. #80, p. 25 n.8.)

The Seventh Affirmative Defense argues that MetLife cannot rescind the Policy based on a fraud standard because MetLife's rescission letter did not put Dr. Liebowitz on notice of his alleged fraud. (Doc. #58, p. 8.) MetLife seeks judgment on this defense because the rescission letter quoted the "Time Limit on Certain Defenses" provision, which clearly details fraudulent misstatements. (Doc. #80, p. 25.)

Dr. Liebowitz's Response does not dispute or otherwise counter MetLife's facts or arguments, abandoning these affirmatives defenses. (See Doc. #89.) E.g., Haasbroek v. Princess Cruise Lines, Ltd., 286 F. Supp. 3d 1352, 1358 n.4 (S.D. Fla. 2017) ("When a party fails to address a specific claim, or fails to respond to an argument made by the opposing party, the Court deems such claim or argument abandoned.") In any event,

28

there are no issues of disputed material facts which would prevent summary judgment in MetLife's favor. MetLife is entitled to partial judgment as to the Sixth and Seventh Affirmative Defenses.

### (8) Statute of Limitations

Dr. Liebowitz's Eighth (and final) Affirmative Defense asserts that MetLife's rescission based on fraud is barred by the applicable Florida statute of limitations. MetLife moves for summary judgment on this defense. (Doc. #80, p. 25.) Dr. Liebowitz also moves for summary judgment based on the statute of limitations. (Doc. #78, pp. 15-17.)

Both parties agree that the applicable statute of limitations for MetLife's rescission claim is four years because MetLife's claim is based in fraud. See Fla. Stat. § 95.11(3)(j). (Doc. #78, p. 15; Doc. #90, p. 13.) But the parties disagree on when MetLife's claim accrued and whether the claim is time-barred. MetLife asserts that its claim accrued in December 2018, after Dr. Liebowitz submitted his disability claim. (Doc. #90, pp. 13-14.) Dr. Liebowitz asserts that MetLife's claim accrued at the time of his Application and the Policy's issuance (between March and May 2015) because: (1) MetLife could have, with due diligence, discovered the misstatements in the Application in 2015; and (2) MetLife did not plead delayed discovery. (Doc. #78, p. 16; Doc. #89, pp. 16-20; Doc. #91, pp. 5-6.)

29

Under Florida law, the statute of limitations begins to run when the cause of action accrues. Hearndon v. Graham, 767 So. 2d 1179, 1185 (Fla. 2000). Generally, a cause of action accrues, and the statute of limitations therefore begins to run, on the date the last element constituting the cause of action occurs. Id. at 1184-85 (citing Fla. Stat. § 95.031). In fraud claims, however, the "delayed discovery rule" may postpone the running of the statute of limitations until "the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence." Fla. Stat. § 95.031(2)(a). As a general rule, an insurer is entitled to rely on statements in an application and does not need to search public records to verify them. Indep. Fire Ins. Co. v. Arvidson, 604 So. 2d 854, 856 (Fla. 4th DCA 1992)) ("[a]n insurer is entitled to rely upon the accuracy of the information in an application, and has no duty to make additional inquiry"); Nembhard v. Universal Prop. & Cas. Ins. Co., No. 3D20-1383, 2021 WL 3640525, at *3 (Fla. 3d DCA Aug. 18, 2021) (citations omitted) ("An insurance company has the right to rely on an applicant's representations in an application for insurance and is under no duty to inquire further, unless it has actual or constructive knowledge that such representations are incorrect or untrue.").

The record establishes the following chronology:

30

- January 30, 2015:  Dr. Liebowitz signs the Application. (Doc. #97, ¶ 9(1).)

- April 16 – May 3, 2015:  The Policy issues with an effective date of March 6, 2015.  (Id. ¶ 9(4).)

- May 3, 2015: MetLife delivers the Policy to Dr. Liebowitz.  Dr. Liebowitz signs an Amendment to the Application, affirming "[t]here are no facts or circumstances which would require a change in the answers in the application."  (Id. ¶ 9(7).)  MetLife undertakes no further investigation into Dr. Liebowitz or his Application.  (Id. ¶ 9(8).)

- September 18, 2018: MetLife mails a claims form to Dr. Liebowitz.  (Doc. #87-1.)

- November 15, 2018: MetLife mails a second letter to Dr. Liebowitz asking whether he intends to follow through with his disability claim.  (Doc. #87-2.)

- November 29, 2018: Woods accesses the DOH website and prints Dr. Liebowitz's medical licensing information. (Doc. #87-3.)

- December 18, 2018:  Dr. Liebowitz files his initial claims forms for benefits. (Doc. #80, ¶43.)

- December 28, 2018: Woods prints additional information from the DOH website concerning Dr. Liebowitz's medical licensing.  (Docs. ## 87-6, 87-7.)

- December 2018 – December 2019: MetLife investigates Dr. Liebowitz's disability claim.

- December 30, 2019:  MetLife sends Dr. Liebowitz a Notice of Rescission.  (Doc. #97, ¶9(21).)

- April 15, 2020:  MetLife files federal lawsuit.  (Doc. #1.)

Based on this record, MetLife's rescission claim accrued, at the earliest, on November 29, 2018, when Woods reviewed the DOH website and arguably could have, with due diligence, discovered

31

the DOH Complaints.  The record contains no evidence to suggest that MetLife had actual or constructive knowledge that the Application statements were false, and so MetLife was entitled to rely on Dr. Liebowitz's statements in his Application without any additional inquiry.  MetLife's April 15, 2020 complaint was timely.

Dr. Liebowitz's argument that MetLife was required to affirmatively plead delayed discovery also fails.  The statute of limitations is an affirmative defense, and MetLife need not have negated it in its Complaint, La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004), nor have filed a reply.  Fed. R. Civ. P. 12(a)(1)(C); Miller v. Abercrombie & Kent, Inc., No. 08-61471-CIV, 2009 WL 259672, at *1 (S.D. Fla. Feb. 4, 2009) (no requirement in federal pleading that a reply to affirmative defenses be filed).  Dr. Liebowitz motion for summary judgment based on the statute of limitations is denied.  (Doc. #78, pp. 15-17.)  MetLife is entitled to partial judgment as to the Eighth Affirmative Defense.

### D.    Summary

The Court denies Dr. Liebowitz's motion for summary judgment in its entirety.  As to MetLife's motion, the Court grants partial summary judgment in favor of MetLife on the first, second, and fourth components of the fraud elements of MetLife's rescission claim.  The Court also enters partial summary judgment in favor of

MetLife on the First, Fourth, Fifth, Sixth, Seventh, and Eighth Affirmative Defenses.

Pursuant to Fed. R. Civ. P. 56(g), the Court finds that the following material facts are not genuinely in dispute and will treat them as established for the coverage determination in this case:

1.  Dr. Liebowitz made false statements concerning material facts when answering Questions 5(i) and 17 in the Application.

2.  Dr. Liebowitz knew the representations he made when answering Questions 5(i) and 17 in the Application were false.

3.  MetLife was consequently injured when acting in reliance of Dr. Liebowitz's misrepresentations.

4.  The Policy includes the provision set forth in Fla. Stat. § 627.607(1).

5.  Dr. Liebowitz was not assisted by a MetLife insurance agent when filling out the Application.

6.  MetLife put Dr. Liebowitz on notice of its intent to rescind the Policy based on Dr. Liebowitz's alleged fraud.

7.  MetLife relied on the statements made by Dr. Liebowitz in his Application in 2015 and did not investigate his answers until after Dr. Liebowitz filed his claim.

**E.    Motion for Entry of Judgement**

As a final matter, also pending before the Court is Dr. Liebowitz's Motion for Entry of Judgment Under Rule 54(b) Following

33

Entry of Partial Summary Judgment (Doc. #95), filed on October 27, 2021. In this motion, Dr. Liebowitz assumes he will prevail on the coverage issue following these cross motions for summary judgment, and requests the Court enter judgment in his favor. Since this did not happen, the motion is denied.

Accordingly, it is now

**ORDERED:**

1. Dr. Liebowitz's motion for summary judgment (Doc. #78) is **DENIED.**

2. MetLife's motion for summary judgment (Doc. #80) is **DENIED IN PART AND GRANTED IN PART,** as set forth above.

3. Dr. Liebowitz's motion for entry of judgment under Rule 54(b) (Doc. #95) is **DENIED.**

4. The Clerk shall withhold entry of partial summary judgment until further order by the Court.

5. The Court will schedule a bench trial on the remaining coverage issues in a separate order.

**DONE and ORDERED** at Fort Myers, Florida, this __11th__ day of January, 2022.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

34

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

METROPOLITAN LIFE INSURANCE
COMPANY,

      Plaintiff,

v.                          Case No:  2:20-cv-276-JES-MRM

FRED A. LIEBOWITZ,

      Defendant.

_____

**OPINION AND ORDER**

This matter came before the Court on March 2 through 4, 2022, for a bench trial concerning two issues remaining after consideration of cross motions for summary judgment.  The Court heard testimony from Dr. Fred Liebowitz, Jamie Frederick, John Dieguez, William Whitney, Theresa Woods, and Ronald Graff.[1]  The Court also received a number of exhibits from both sides and heard closing arguments from counsel.  Both parties also filed post-trial memorandum and/or trial briefs.  (Docs. ## 118, 119, 120.)  As required by Fed. R. Civ. P. 52, the Court makes findings of fact and conclusions of law as set forth below.

**I.**

_____

[1] The testimony of Woods and Graff were submitted through deposition designations by the parties. (Pl. Ex. 131; Def. Ex. 48.) At the bench trial, Plaintiff objected to the admission of Graff's deposition testimony on relevance grounds.  Plaintiff's objection is overruled.

In its Complaint, plaintiff Metropolitan Life Insurance Company (MetLife) seeks court-ordered recission of defendant Dr. Fred Liebowitz's (Dr. Liebowitz) disability insurance policy (the Policy). Specifically, MetLife seeks a Court order "rescinding the Policy, and declaring that Liebowitz has no right, title, or interest in the Policy." (Doc. #1, Prayer for Relief.) In his Third Amended Counterclaim, Dr. Liebowitz asserts two interconnected counterclaims seeking reinstatement of the Policy and payment of benefits under the Policy. (Doc. #58.)

Discovery and trial in this matter were bifurcated. The first (current) phase will determine the insurance coverage issue, i.e., whether there is an enforceable Policy between Dr. Liebowitz and MetLife or whether MetLife can properly rescind the Policy. If coverage is established, the second phase is intended to address what, if any, benefits are due to Dr. Liebowitz under the Policy.

In a prior Opinion and Order (Doc. #103) resolving cross-motions for summary judgment, the Court denied Dr. Liebowitz's motion for summary judgment in its entirety. As to MetLife's motion, the Court granted partial summary judgment in favor of MetLife on the first, second, and fourth components of the fraud elements of MetLife's rescission claim. The Court also granted partial summary judgment in favor of MetLife on Dr. Liebowitz's First, Fourth, Fifth, Sixth, Seventh, and Eighth Affirmative Defenses. Additionally, pursuant to Fed. R. Civ. P. 56(g), the

2

Court found that the following material facts were not genuinely in dispute and treated them as established for the coverage determination in this case:

> 1.  Dr. Liebowitz made false statements concerning material facts when answering Questions 5(i) and 17 in the Application.
>
> 2. Dr. Liebowitz knew the representations he made when answering Questions 5(i) and 17 in the Application were false.
>
> 3.  MetLife was consequently injured when acting in reliance of Dr. Liebowitz's misrepresentations.
>
> 4. The Policy includes the provision set forth in Fla. Stat.§ 627.607(1).
>
> 5. Dr. Liebowitz was not assisted by a MetLife insurance agent when filling out the Application.
>
> 6. MetLife put Dr. Liebowitz on notice of its intent to rescind the Policy based on Dr. Liebowitz's alleged fraud.
>
> 7. MetLife relied on the statements made by Dr. Liebowitz in his Application in 2015 and did not investigate his answers until after Dr. Liebowitz filed his claim.

(Doc. #103, p. 33.)

The two primary remaining issues to be resolved in the bench trial are whether MetLife established by a preponderance of the evidence that: (1) Dr. Liebowitz made the false statements on the insurance application with fraudulent intent, and (2) MetLife rescinded the Policy within a reasonable period of time.  The Court finds, for the reasons set forth below, that Dr. Liebowitz did

3

have such fraudulent intent and that MetLife did rescind the Policy within a reasonable period of time.

## II.

Much of the evidence presented at trial was repetitious of the evidence presented in connection with the summary judgment motions.  The parties previously submitted a "Statement of Undisputed Issues of Fact" in the Joint Pretrial Statement (Doc. #97, pp. 6-11).  It continues to be the case that "[b]oth parties contend that the facts are essentially undisputed . . ."  (Doc. #97, p. 11), although the conclusions they draw from the facts vary greatly.  The Court finds the following facts have been proven by at least a preponderance of the evidence:

### A.    DOH Investigations and Complaints

For approximately 30 years Dr. Liebowitz has been a pain management physician, and at all relevant times ran a pain management clinic in the Fort Myers, Florida area. (Doc. #97, ¶ 9(1)).  Dr. Liebowitz's primary source of income was treating patients for pain and prescribing narcotics.  (Id. ¶ 9(3).)  Dr. Liebowitz is not board certified.

By a personally delivered letter dated May 10, 2010, the Florida Department of Health (DOH) notified Dr. Liebowitz that it was conducting a confidential investigation of a complaint filed against him in connection with the medical care he provided to different patients.  (Id. ¶ 9(10); Pl. Ex. 12.) Dr. Liebowitz

4

notified his malpractice insurance carrier of the DOH investigation, and his carrier hired attorney William Whitney (Mr. Whitney) to represent Dr. Liebowitz. (Doc. #97, ¶ 9(12).) Around this same time, the DOH initiated two additional investigations against Dr. Liebowitz, relating to his care of approximately thirteen patients. (See Pl. Ex. 98D (describing cases).)

The DOH proceeded with the three confidential investigations until early 2013. Dr. Liebowitz testified that, from his point of view, the three investigations appeared largely dormant during these years, which he attributed to weakness of the cases.

Starting in January 2013,[2] after a panel of the DOH found probable cause, the DOH filed and served Dr. Liebowitz with three separate Administrative Complaints (the "DOH Complaints") alleging substandard medical care was provided to certain patients. (Doc. #97 ¶ 9(11); Pl Ex. 27.) The DOH Complaints alleged that on many occasions Dr. Liebowitz improperly prescribed pain killers to patients, including one incident where a patient subsequently died from drug overdose. The DOH Complaints requested that the Board

---

[2] The Court's Opinion and Order granting partial summary judgment (Doc. #103) stated "in 2010 and 2011" the Administrative Complaints were filed. As pointed out during the bench trial, this was incorrect. Dr. Liebowitz was served with confidential notices from the DOH that they were investigating his license in 2010 and 2011. (Pl. Ex. 12.) The official Administrative Complaints were filed and became available in public record in 2013 and 2014. This correction is not material to the Court's summary judgment Opinion and Order.

5

of Medicine impose penalties on Dr. Liebowitz, including revocation or suspension of his medical license, restrictions on his medical practice, fines, reprimands, probation, corrective action, and remedial education. On February 14, 2013, Dr. Liebowitz signed an Election of Rights form disputing the facts in the DOH Complaints and requesting a formal hearing. (Def. Ex. 39.) Dr. Liebowitz testified at trial, and has always maintained, that he did nothing improper and that the DOH would not be able to prove otherwise. Dr. Liebowitz testified that, based on the advice of counsel, he believed that nothing in the DOH allegations was of sufficient severity to warrant the loss of his medical license.

Throughout the DOH proceedings, from the confidential complaints to the DOH Complaints, Mr. Whitney kept Dr. Liebowitz apprised of significant developments. (Doc. #97, ¶ 9(13).) Dr. Liebowitz testified that he worked hard to defend himself against the DOH's allegations with counsel, painstakingly reviewing medical records and expert opinions, because he felt he had done nothing wrong. Dr. Liebowitz stayed current on matters related to the DOH Complaints because the proceedings were important to his medical practice and reputation. Dr. Liebowitz testified that both he and Mr. Whitney felt Dr. Liebowitz would be successful in his defense.

In July 2014, the DOH provided Dr. Liebowitz with a proposed settlement (the 2014 Settlement Agreement) (Pl. Ex. 35) for the

6

three pending DOH Complaints. Dr. Liebowitz and Mr. Whitney discussed the proposal in detail. Around this same time, Dr. Liebowitz was sent another notice from the DOH concerning a fourth, still-confidential investigation into his medical care of patients.[3] In September 2014, Dr. Liebowitz hired a second attorney (Allan Grossman[4]) with his own funds to provide another review of his cases and to evaluate the 2014 Settlement Agreement. (Pl. Ex. 98D.)

The proposed 2014 Settlement Agreement contemplated resolution of Dr. Liebowitz's three pending DOH Complaints and did not consider the fourth investigation. The 2014 Settlement Agreement included a reprimand against Dr. Liebowitz's medical license; a "death penalty" provision for Dr. Liebowitz's specialized practice, which, if accepted, would have prohibited Dr. Liebowitz from prescribing controlled substances; the imposition of a fine and costs; and other non-economic conditions. Dr. Liebowitz testified he never took this proposal seriously, and never accepted it.

Dr. Liebowitz did, however, on advice of counsel, take steps in late 2014 to enhance his settlement negotiation position. Dr.

---

[3] This would ultimately become an official, public DOH Complaint in late 2015.

[4] Mr. Grossman is the former general counsel of the Florida Board of Medicine.

7

Liebowitz: (1) hired a risk management consultant to evaluate his medical practice (Pl. Ex. 98E); (2) took various continuing medical education courses related to his specialty; and (3) went to Colorado for a physician's assessment (Pl. Ex. 98F). Dr. Liebowitz paid for these services out-of-pocket.

B.    **MetLife Insurance Application and Policy Issuance**

For the prior 10-15 years, Dr. Liebowitz's regular insurance agent was Mark Vertich (Mr. Vertich), an independent insurance broker. Sometime in mid- to late-2014, Dr. Liebowitz spoke with Mr. Vertich about obtaining disability insurance. Dr. Liebowitz testified that, several years before speaking with Mr. Vertich about disability insurance, he had a disability policy with another insurer for 10-15 years but had let the policy lapse for several years before seeking the MetLife policy. Dr. Liebowitz decided that, considering his current family situation, he had made a mistake in letting the policy lapse. It is unclear why Dr. Liebowitz or Mr. Vertich chose to pursue a MetLife policy, since at the time Mr. Vertich was not an authorized broker for MetLife.

In any event, on January 30, 2015, Dr. Liebowitz and Mr. Vertich sat at a kitchen table at Dr. Liebowitz's office to fill out MetLife's 11-page application (the "Application") (Pl. Ex. 3) and 2-page Health Questionnaire Supplement (Pl. Ex. 6) for disability insurance. Mr. Vertich read Dr. Liebowitz the questions on the Application and Supplement, Dr. Liebowitz dictated his

8

responses to Mr. Vertich, Mr. Vertich transcribed the information, and Dr. Liebowitz signed the document.  There were no instructions provided with the Application and Mr. Vertich did not provide any instruction to Dr. Liebowitz.  Dr. Liebowitz assumed MetLife wanted an applicant to be truthful and honest and to fill out everything to the best of their knowledge.  Indeed, the Application provides that all answers are "to the best of [his] knowledge and belief." (Pl. Ex. 3, p. 6.)  Dr. Liebowitz testified that the information in the Application was transcribed correctly by Mr. Vertich.  The total process to complete the Application took 10-15 minutes.

The Application included the following two relevant questions and answers:

> Question 5(i): Are you aware of any fact that could change your occupational status or financial stability?  If YES, please give details below.
>
> Answer: No [box checked].
>
> ***
>
> Question 17: Have you EVER had a professional license suspended, revoked, or is such license under review or have you ever been disbarred? If YES, give details below.
>
> Answer: No [box checked].

(Id. pp. 1, 5.)  Dr. Liebowitz maintains to this day that these answers were truthful.  Prior to issuing the Policy, MetLife made no investigation to determine the accuracy of Dr. Liebowitz's

9

answers to the two questions in the Application, relying solely on his answers. (Doc. #97, ¶ 9(8).)

MetLife processed Dr. Liebowitz's Application and issued the Policy between April 16 and May 3, 2015. (Doc. #97, ¶ 9(4); Pl. Ex. 1.) The Policy was backdated to March 6, 2015 to preserve Dr. Liebowitz's age (54 years old at the time of his Application). (Pl. Ex. 1, p. 3.) Between May 3 and 4, 2015, the Policy was delivered to Dr. Liebowitz, who signed an Amendment to the Application which affirmed that "there [were] no facts or circumstances which would require a change in the answers in the application" and that "[t]o the best of my knowledge and belief, the statements and answers in the application as amended by this form are true and complete as of the date this form is signed." (Pl. Ex. 9.)

The Policy itself is an occupational disability insurance policy. (Pl. Ex. 1.) MetLife issues this type of insurance policy to high-wage earners, such as lawyers and doctors, like Dr. Liebowitz. Occupational disability insurance policies are designed to protect a wage-earner's income should the insured be unable to work because of a disability. The Policy provides for both total disability and residual disability benefits. (Id. p. 3.) If Dr. Liebowitz was ever found to be totally disabled under the Policy, he would receive $16,550 per month in benefits.

10

### C.    Resolution of the DOH Complaints

Returning to Dr. Liebowitz's DOH proceedings, the intensity of the proceedings seemed to ebb and flow over the years, sometimes with greater interest and activity than at other times. By March 2016, although Dr. Liebowitz continued to maintain his innocence, Dr. Liebowitz advised Mr. Whitney of his willingness to negotiate a settlement. (Pl. Ex. 99.) However, there is nothing to indicate Dr. Liebowitz and the DOH talked settlement in 2016 and Mr. Whitney testified that the proposed 2014 Settlement Agreement remained on the table. By 2017 Dr. Liebowitz felt that a perceived opioid epidemic caused the narcotics prescription practices of physicians to receive closer scrutiny. But the DOH proceedings remained relatively quiet. Finally, in December 2017 the Sun-Sentinel described Dr. Liebowitz's DOH Complaints in an on-line article titled "Dangerous doctors, Pain pill docs keep prescribing despite state charges." (Pl. Ex. 40.) This publication and other pressures about the length of Dr. Liebowitz's DOH proceedings appeared to create renewed interest in the DOH prosecuting Dr. Liebowitz's cases.

By 2018, the DOH amended the DOH Complaints, reduced the scope of the allegations (Pl. Ex. 115B) to 16 counts, and told Mr. Whitney they were willing to administratively try those counts. As this new prosecution progressed, Mr. Whitney's evaluation of the cases began to change, recognizing that it would be difficult

11

for Dr. Liebowitz to be successful on all 16 counts. (Pl. Ex. 45.) Dr. Liebowitz became focused on the three-strike rule, under which his medical license could be threatened if the administrative judge found three violations of the standard of care. Also, Dr. Liebowitz's defense funds available through his malpractice insurer were beginning to run low, and the anticipated costs of defending himself were significant. By August 2018 these circumstances caused Dr. Liebowitz and his attorney to engage in extensive discussions regarding settlement. (Id.)

On September 11, 2018, pursuant to the advice of counsel, Dr. Liebowitz entered into a settlement agreement (the 2018 Settlement Agreement) with the DOH. (Doc. #97, ¶ 9(15); Pl. Ex. 60.) The Board of Medicine approved the 2018 Settlement Agreement at a hearing on December 7, 2018 and issued a Final Order approving the 2018 Settlement Agreement on December 18, 2018. The Clerk of the Department of Health docketed the Final Order on December 20, 2018. (Pl. Ex. 60.) Among other things, the Final Order issued a reprimand against Dr. Liebowitz's medical license, restricted his DEA license and his ability to prescribe any controlled substance until he complied with certain requirements, imposed a fine and costs, and imposed other non-economic conditions. (Id.) Despite the settlement, Dr. Liebowitz testified at trial that to this day he feels he did everything properly and within the required standard of care.

12

### D.    Dr. Liebowitz's Insurance Claim

In September 2018, when Dr. Liebowitz was filling out the health section of a life insurance policy application with Mr. Vertich, he discussed difficulties with his left ankle arising from October-November 2014.[5]  Mr. Vertich reminded Dr. Liebowitz of his Policy with MetLife, but Dr. Liebowitz did not perceive himself as disabled at the time and was uncertain whether he wanted to file a claim.  Nonetheless, on September 17, 2018, Mr. Vertich called MetLife about a disability claim to be filed by Dr. Liebowitz.  (Pl. Ex. 48.)

The next day, MetLife sent Dr. Liebowitz a letter enclosing an initial claim form.  (Pl. Ex. 49.)  On October 22, 2018, Theresa Woods,[6] a MetLife claims adjuster, spoke with Mr. Vertich on the phone about the potential claim by Dr. Liebowitz.  (Pl. Ex. 54.)  On November 15, 2018, not having heard from Dr. Liebowitz or Mr. Vertich, Ms. Woods followed-up with Dr. Liebowitz regarding his potential claim.  (Pl. Ex. 55.)  On that same day, Ms. Woods placed the Sun-Sentinel article into Dr. Liebowitz's claim file.  (Pl.

---

[5] Dr. Liebowitz testified at trial that he began experiencing ankle pain in late 2014.  In his claim form, Dr. Liebowitz wrote that he began experiencing ankle pain in late 2015 and his disabling condition began in January 2016.  (Pl. Ex. 61.)  In his counterclaim, Dr. Liebowitz states his disabling condition from ankle pain began in July 2017.  (Doc. #58, ¶ 38.)

[6] In certain documents submitted as evidence, Theresa Woods is seen by her maiden name, Theresa First.  The Court will consistently use Theresa Woods.

13

Ex. 40.)  On November 29, 2018, Ms. Woods placed a DOH license verification printout from the DOH website into the claim file. (Pl. Ex. 57.)  On December 14, 2018, after not receiving a claim form, Ms. Woods again reached out to Dr. Liebowitz concerning his potential claim.  (Pl. Ex. 58.)

On December 18, 2018, Dr. Liebowitz submitted his initial claim form for residual disability benefits to MetLife.  (Pl. Ex. 61.)  In the form, Dr. Liebowitz indicated that his disabling condition (ankle injury) which entitled him to residual disability benefits began on January 4, 2016.  Dr. Liebowitz attached a detailed handwritten statement to the claim form which indicated he wanted have ankle surgery in early 2019 and secure a temporary physician (locum tenens) to help cover his practice while he was off his feet.  (Id.)  Dr. Liebowitz did not disclose in his claim form that he also intended to hire a temporary physician to prescribe pain medication in early 2019 because of the restrictions on his DEA license from the 2018 Settlement Agreement.  Dr. Liebowitz testified that he hoped to get ankle surgery done in early 2019[7] because he already knew he would have coverage for his practice due to the DEA restrictions.

**E.  MetLife's Claim Processing and Rescission**

---

[7] Dr. Liebowitz ultimately had successful ankle surgery in April 2021.

Ms. Woods then began formally processing Dr. Liebowitz's claim. The evidence showed the following timeline:

| Date | Occurrence |
|---|---|
| December 18, 2018 | Dr. Liebowitz submitted his initial claim form. (Pl. Ex. 61.) |
| December 28, 2018 | Ms. Woods printed, and included in the claim file, two documents from Dr. Liebowitz's DOH public profile which showed information about the DOH Complaints and 2018 Settlement Agreement. (Pl. Ex. 62; Def. Ex. 20.) |
| January 9, 2019 | Ms. Woods sent Dr. Liebowitz a status letter that described the Policy, requested certain financial and medical records from him, and explained that his almost three-year delay in filing the claim may necessitate more time to evaluate the claim. (Def. Ex. 21.) |
| February 8, 2019 | Ms. Woods sent Dr. Liebowitz another status letter requesting additional information and informing Dr. Liebowitz that a field representative would be meeting with him. (Def. Ex. 22.) |
| March 8, 2019 | Ms. Woods sent a status letter to Dr. Liebowitz. (Def. Ex. 23.)[8] |
| May 3, 2019 | Ms. Woods sent a status letter to Dr. Liebowitz. (Def. Ex. 24.)[9] |
| Late May to early June 2019 | Ms. Woods went on maternity leave and Jamie Frederick was assigned to Dr. Liebowitz's claim. Mr. Frederick begins to focus on the DOH medical license issue. |

---

[8] In the various status letters, Ms. Woods described the medical, financial, and occupational records she was collecting, or still needed from Dr. Liebowitz, to process his claim. None of the status letters from Ms. Woods sought information from Dr. Liebowitz about the DOH Complaints.

[9] See fn. 8.

15

| June 7, 2019 | Mr. Frederick spoke to Dr. Liebowitz on the phone, provided a status update, and inquired about the DOH proceedings.  (Pl. Ex. 71.) |
| --- | --- |
| June 8, 2019 | Mr. Frederick sent a follow-up status letter to Dr. Liebowitz and requested additional information about the DOH Complaints.  (Def. Ex. 25.) |
| July 19, 2019 | Mr. Frederick met with in-house counsel to discuss the DOH Complaints and possible impact on Dr. Liebowitz's claim adjudication. |
| August 8, 2019 | Mr. Frederick sent another status letter to Dr. Liebowitz.  (Def. Ex. 28.) |
| August 8, 2019 | Mr. Frederick requested information from the DOH about Dr. Liebowitz's DOH proceedings since 2014.  (Pl. Ex. 73.)  The DOH quickly responded.  (Pl. Ex. 74.) |
| Early August 2019 | Mr. Frederick sent a referral to MetLife's underwriting department to determine whether there were issues with the Application based on the information in MetLife's possession. |
| August 20, 2019 | Linda Castonguay executed a Referral to Underwriter, which described the possible material misrepresentations in the Application.  (Pl. Ex. 77.)  Ms. Castonguay pointed out issues with Dr. Liebowitz's medical disclosures.  (Id.)  Ms. Castonguay also stated that, had MetLife known of the DOH Complaints and medical licensing issues, MetLife would not have issued the Policy. (Id.)  Ms. Castonguay only mentioned Question 17, not Question 5(i), in support of her finding. |
| October 10, 2019 | Without any response from Dr. Liebowitz to the June 8th or August 8th letters, Mr. Frederick sent Dr. Liebowitz a letter (Def. Ex. 29) describing MetLife's concern with answers to Application Questions 5(i) and 17 because Dr. Liebowitz did not disclose the DOH proceedings and requested an explanation for the failure to disclose.  (Id.) |

16

| | |
|---|---|
| October 24, 2019 | Dr. Liebowitz responded, through counsel, and asserted his belief that he did not need to disclose the DOH proceedings on the Application because:<br><br>1. It was his understanding and belief and remains the same that [he] did not [sic] believe in good faith that any proceedings would have changed his occupational status or financial stability and, in fact, the administrative proceeding ended without any admission of wrongdoing on Dr. Liebowitz's part whatsoever; and<br><br>2. His license was neither suspended nor revoked nor was he ever "disbarred" as a result of any proceeding.<br><br>(Pl. Ex. 79.) |
| October 29, 2019 | Mr. Frederick requested additional information from counsel about the possible medical misrepresentations in the Application. (Pl. Ex. 79A.) |
| December 2, 2019 | After receiving an extension of time (Pl. Exs. 79B, 79C, 80), Dr. Liebowitz's counsel responded (Pl. Ex 79D). |
| December 3, 2019 | Mr. Frederick sent Dr. Liebowitz's counsel a letter, confirming receipt of his prior correspondence and stating that MetLife was reviewing all information. (Pl. Ex. 79E.) |
| December 18, 2019 | Interested MetLife personnel met to discuss Dr. Liebowitz's file and Application. MetLife ultimately decided to rescind the Policy. (Pl. Ex. 81.) |
| December 30, 2019 | MetLife sent Dr. Liebowitz, through counsel, a formal Notice of Rescission, which included a check representing all premiums paid plus interest. (Pl. Exs. 82, 83.) |

17

|  |  |
|---|---|

### III.

Generally, to succeed on a claim for rescission a plaintiff must prove the following six elements by a preponderance of the evidence:

> (1) [t]he character or relationship of the parties; (2) [t]he making of the contract; (3) [t]he existence of fraud, mutual mistake, false representations, impossibility of performance, or other ground for rescission or cancellation; (4) [t]hat the party seeking rescission has rescinded the contract and notified the other party to the contract of such rescission; (5) [i]f the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible; [and] (6) [l]astly, that the moving party has no adequate remedy at law.

Billian v. Mobil Corp., 710 So.2d 984, 991 (Fla. 4th DCA 1998).

### A.    Undisputed Elements of Rescission Claim

The existence of four of the six elements is not disputed by the parties.  The "first requirement of a suit for rescission under Florida law" is that the "parties to the lawsuit lie in contractual privity."  Thompkins v. Lil' Joe Records, Inc., 476 F.3d 1294, 1315 (11th Cir. 2007) (citation omitted).  The second element of a rescission claim requires proof that a contract was made between the parties.  Billian, 710 So.2d at 991.  It is undisputed that there was a contract (i.e., the insurance Policy) between MetLife

18

and Dr. Liebowitz.    The Court concludes that MetLife has established the first and second elements of its rescission claim.

The fifth element of a rescission claim requires MetLife to prove that it offered to restore any benefits received from Dr. Liebowitz under the Policy.    Billian, 710 So.2d at 991.    On December 30, 2019, MetLife sent Dr. Liebowitz a check representing all premiums previously paid on the Policy plus interest.    (Pl. Exs. 82, 83.)    The Court concludes that MetLife has established the fifth element of its rescission claim.

The sixth element of a rescission claim requires MetLife to show that there are no adequate remedies at law.    Billian, 710 So.2d at 991.    See also Rost Invs., LLC v. Cameron, 302 So. 3d 445, 450 (Fla. 2d DCA App. 2020), review denied, No. SC20-1495, 2021 WL 1402224 (Fla. Apr. 14, 2021) ("Rescission is an equitable remedy which is only available if the [plaintiffs] have no remedy at law." ); Collier v. Boney, 525 So. 2d 971, 972 (Fla. 1st DCA 1988) ("[A] fundamental requirement necessary for rescission of a contract is that the moving party has no adequate remedy at law."). MetLife has no legal remedy, and its only remedy to preclude Dr. Liebowitz from seeking benefits under the Policy is to rescind the Policy.    The Court concludes that MetLife has established the sixth element of its rescission claim.

B.    **Disputed Elements of Rescission Claim**

19

The third and fourth elements of the rescission claim are strenuously contested by the parties and were the two remaining issues after the Court's Order on summary judgment: (1) MetLife's grounds for rescission, i.e., Dr. Liebowitz's intent; and (2) MetLife's actual rescission, i.e., whether MetLife rescinded the policy within a reasonable time period.  The Court addresses each in turn.

### (1) Misrepresentations on Insurance Application

The third element of a recission claim requires a plaintiff to establish a ground for recession, such as the existence of fraud or false representations.  Billian, 710 So.2d at 991.  In the context of the rescission of an insurance policy, "Florida law ... gives an insurer the unilateral right to rescind its insurance policy on the basis of misrepresentation in the application of insurance."  Moustafa v. Omega Ins. Co., 201 So. 3d 710, 714 (Fla. 4th DCA 2016) (citation omitted).

Rescission of an insurance policy because of a misstatement in the application is governed by Fla. Stat. § 627.409(1), which provides in relevant part:

> (1) Any statement or description made by or on behalf of an insured or annuitant in an application for an insurance policy or annuity contract, or in negotiations for a policy or contract, is a representation and not a warranty. Except as provided in subsection (3), a misrepresentation, omission, concealment of fact, or incorrect statement

20

> may prevent recovery under the contract or policy only if any of the following apply:
>
> (a)    The    misrepresentation,    omission, concealment, or statement is fraudulent or is material to the acceptance of the risk or to the hazard assumed by the insurer.
>
> (b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

Under this statute, "misrepresentations, omissions, concealment of facts, and incorrect statements on an insurance application will not prevent a recovery under the policy unless they are either: (1) fraudulent; (2) material to the risk being assumed; or (3) the insurer in good faith either would not have issued the policy or would have done so only on different terms had the insurer known the true facts." Certain Underwriters at Lloyd's London v. Jimenez, 197 So. 3d 597, 601 (Fla. 3d DCA 2016). Even an unintentional misstatement can constitute grounds for rescission under the statute if the other statutory elements are satisfied. Hauser v. Life Gen. Sec. Ins. Co., 56 F.3d 1330, 1334 (11th Cir. 1995), as amended on denial of reh'g (Sept. 15, 1995).

In this case, however, the statutory basis for rescission is further restricted by two provisions in the Policy. First, the Policy contains a "Time Limit on Certain Defenses" provision, which

21

provides: "After 2 years from the issue date, only fraudulent misstatements in the application may be used to void the policy or deny any claim for loss incurred or disability starting after the 2-year period." (Doc. #103, p. 27.)[10] Because of the "Time Limit on Certain Defenses" provision, MetLife may only rescind the Policy based on fraudulent misstatements. Fla. Stat. § 627.409(1)(a); § 627.607(1). Under Florida law, "there are four elements of fraudulent misrepresentation: (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." Butler v. Yusem, 44 So. 3d 102, 105 (Fla. 2010) (quotation omitted). Following the Court's Order on summary judgment, only the third element remains. (Doc. #103.)

Second, the language used in the Application required Dr. Liebowitz to affirm that his statements were true "to the best of his knowledge and belief." "Where the language an insurance company chooses in its insurance application shifts the focus from a determination of truth or falsity of an applicant's statements

_____

[10] The original Policy language did not strictly conform with Fla. Stat. § 627.607(1). (See Pl. Ex. 1, p. 15.) As detailed in the Court's summary judgment order, the Court deemed the Policy to include the two-year provision of Fla. Stat. § 627.607(1). (Doc. #103, pp. 24-27.)

22

to an inquiry into whether the applicant believed the statements to be true, the applicant's answers must be assessed in light of his actual knowledge or belief." Hauser, 56 F.3d at 1334–35. The Eleventh Circuit has approved the following test for examining responses to questions asked according to the applicant's knowledge and belief:

> The twin qualifiers knowledge and belief] require that knowledge not defy belief. What the applicant in fact believed to be true is the determining factor in judging the truth or falsity of his answer, but only so far as that belief is not clearly contradicted by the factual knowledge on which it is based. In any event, a court may properly find a statement false as a matter of law, however sincerely it may be believed. To conclude otherwise would be to place insurance companies at the mercy of those capable of the most invincible self-deception—persons who having witnessed the Apollo landing still believe the moon is made of cheese.

Hauser, 56 F.3d at 1335 (cleaned up); see also Miguel v. Metro. Life Ins. Co., 200 Fed. App'x. 961, 966 (11th Cir. 2006) (citations omitted).

So, considering the foregoing law, the Court asks two questions: (1) Did Dr. Liebowitz intend that MetLife rely on his false statements in the Application?  And, (2) Did Dr. Liebowitz fail to fill out the Application "to the best of his knowledge and belief?"  Because the Court answers both questions "yes," the Court finds that MetLife had grounds to rescind the Policy.

23

For the first question, the Court already found, and continues to find, that Dr. Liebowitz knowingly made false statements in the Application. (Doc. #103, p. 16.) Dr. Liebowitz filled out the Application with the intent to receive disability insurance coverage from MetLife. An insurer, like MetLife, is entitled to rely on the statements in the Application. Nembhard v. Universal Prop. & Cas. Ins. Co., No. 3D20-1383, 2021 WL 3640525, at *3 (Fla. 3d DCA Aug. 18, 2021) (citations omitted) ("An insurance company has the right to rely on an applicant's representations in an application for insurance and is under no duty to inquire further, unless it has actual or constructive knowledge that such representations are incorrect or untrue."). By seeking the insurance policy and knowingly making false statements on the Application, Dr. Liebowitz intended for MetLife to rely on his false statements to obtain the Policy from MetLife. See Philip Morris USA Inc. v. Principe, 3D20-875, 2021 WL 4302370, at *6 (Fla. 3d DCA Sept. 22, 2021) (citation omitted) (""A false statement in the abstract, even if knowingly made, does not constitute fraud; indeed, what makes a false statement fraudulent is the declarant's intent that others rely upon it."). The Court finds that MetLife has proven that Dr. Liebowitz acted with fraudulent intent when he completed the Application.

For the second question, despite Dr. Liebowitz's stated belief that he answered Questions 5(i) and 17 on the Application

24

correctly, the circumstantial evidence establishes the contrary. In 2014, Dr. Liebowitz sought out the MetLife policy with Mr. Vertich's assistance, having let a prior disability insurance policy lapse for several years. Despite the lack of instructions with the application form, Dr. Liebowitz testified that he understood the key relevant requirement – that he answer the questions honestly to the best of his knowledge and belief. Dr. Liebowitz clearly knew the two questions at issue were relevant and material, since he was applying for an occupational disability policy. In January 2015, when Dr. Liebowitz filled out the Application with Mr. Vertich's assistance, Dr. Liebowitz's DOH proceedings were active: (1) the 2014 Settlement Agreement was pending and included a serious "death penalty" provision; (2) two attorneys (one being paid out-of-pocket) were reviewing his cases and the 2014 Settlement Agreement; and (3) Dr. Liebowitz was taking active (and expensive) steps to try and improve his negotiation position with the DOH, including flying to Colorado for a physician's assessment in late December 2014. Dr. Liebowitz's stated belief is clearly contradicted by his actual knowledge at the time he filled out the Application.

At trial, Dr. Liebowitz tried to explain his reasoning behind this belief in part because he did not think he needed to disclose the DOH proceedings since he was applying for disability insurance and the DOH proceedings were separate issues. In Dr. Liebowitz's

25

view, the Policy only concerned coverage if he became disabled due to health issues or an accident, and the Policy had nothing to do with his job or losing his license. The Court does not find Dr. Liebowitz's explanation accurate or credible. Dr. Liebowitz was applying for an occupational disability insurance policy, which would provide him at most $16,550 per month if he were unable to work because of a total disability. Dr. Liebowitz's occupational information was important to him receiving coverage from MetLife, including the amount of coverage from MetLife. That is why MetLife asked him questions about his "occupational status" and professional license. Dr. Liebowitz did not fill out the Application "to the best of his knowledge and belief." Had he done so, he would have disclosed the DOH proceedings.

Similarly, the Court does not find Dr. Liebowitz's other explanations for why he believed he was not required to disclose the DOH proceedings to be credible in light of the factual events which were well known to him. While the case is not as tenuous as the moon-made-out-of-cheese example in Hauser, 56 F.3d at 1335, Dr. Liebowitz's stubborn refusal to acknowledge the fact of an ongoing investigation which could jeopardize his medical license and his financial stability cannot justify his answers. The Court finds that when Dr. Liebowitz answered "no" to the two questions, he did not answer either to the "best of his knowledge and belief." Indeed, that Court is satisfied that Dr. Liebowitz did in fact

26

believe that the DOH proceedings were a review of his medical license, that he could lose his medical license either temporarily or permanently, and either such loss would have serious financial repercussions.

Thus, the Court finds that MetLife has carried its burden of proving intent by a preponderance of the evidence and that MetLife has proven all elements of fraudulent misrepresentation. The Court also finds that Dr. Liebowitz did not fill out the Application to the best of his knowledge or belief. The Court concludes that MetLife has establish that it had grounds to rescind the Policy, the third element of its rescission claim.

Additionally, because MetLife established intent, MetLife is entitled to judgment on the Second and Third Affirmative Defenses, the only two defenses which remained following the Court's Order on summary judgment (Doc. #103), to the extent those defenses asserted that MetLife could not rescind the Policy based on Dr. Liebowitz's intent.

### (2) Rescission and Notice of Rescission

The fourth element of a rescission claim requires MetLife to prove that it rescinded the Policy and notified Dr. Liebowitz of the rescission within a reasonable period of time. Billian, 710 So.2d at 991. "An insurer that delays informing its insureds of a dispute about coverage may find itself estopped from contesting coverage if the insureds show prejudice resulting from the delay."

27

Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Sahlen, 999 F.2d 1532, 1537 (11th Cir. 1993).

> [W]hen an insurer has knowledge of the existence of facts justifying a forfeiture of the policy, any unequivocal act which recognizes the continued existence of the policy or which is wholly inconsistent with a forfeiture, will constitute a waiver thereof. While, ordinarily, the insurer is not deemed to have waived its rights unless it is shown that it has acted with the full knowledge of the facts, the intention to waive such rights may be inferred from a deliberate disregard of information sufficient to excite attention and call for inquiry as to the existence of facts by reason of which a forfeiture could be declared.

Johnson v. Life Ins. Co. of Ga., 52 So. 2d 813, 815 (Fla. 1951). An insurer, however, may take a reasonable amount of time to investigate the facts justifying rescission. "An insurer is not deemed to have waived its right to contest the validity of an insurance policy by the acceptance of a premium unless it is shown that it has acted with full knowledge of the facts. Likewise, estoppel can only be invoked against an insurer when its conduct has been such as to induce action in reliance upon it." Mut. of Omaha Ins. Co. v. Eakins, 337 So. 2d 418, 419 (Fla. 2d DCA 1976)(citations omitted.)

The timeline from the start of MetLife's claim processing to the final decision to rescind the Policy demonstrates that MetLife took reasonable time to investigate Dr. Liebowitz's disability claim and his Application before seeking rescission. On December

28

28, 2018, shortly after receiving Dr. Liebowitz's claim form, Ms. Woods printed off information about the DOH Complaints and the restriction on Dr. Liebowitz's medical license. The evidence does not show that Ms. Woods deliberately disregarded this information, but was focused elsewhere. Ms. Woods was actively trying to gather a plethora of information about Dr. Liebowitz's residual disability claim which asserted that his work had been impacted due to an ankle injury since January 4, 2016.[11] Ms. Woods was not looking for possible fraud on the Application. Ms. Woods testified that she did not even remember the Application questions while processing the claim.

MetLife was also not required to rely solely on the printouts from the DOH website to determine that there may have been concerns with the Application. Mr. Frederick, who took over Dr. Liebowitz's file after Ms. Woods left on maternity leave, testified that he did not understand the information shown on the printouts or the DOH website.[12] Notably, once MetLife started actively investigating Dr. Liebowitz's medical license and requested more

---

[11] Dr. Liebowitz's now contends that his disabling condition occurred in July 2017. However, at the time he filled out the Application, he claimed a January 4, 2016 disabling condition. The start of MetLife's claim adjudication and ultimate rescission determination was based on that date.

[12] The DOH website further disclaims any accuracy of the information provided and "strongly urges all users of this site to conduct their own investigation of any individual." See https://www.floridahealth.gov/disclaimer.html.

29

information from him on June 7-8, 2019, Dr. Liebowitz failed to respond until October 24, 2019. So, MetLife's investigation was stalled, in large part, by Dr. Liebowitz himself.

The Court finds that the time MetLife took to rescind Dr. Liebowitz's policy was reasonable. It is also undisputed that MetLife sent Dr. Liebowitz notice of its rescission on December 30, 2019. The Court concludes that MetLife has established the fourth element of its rescission claim.

## IV.

The Court concludes that MetLife carried its burden and has proven all six elements of its rescission claim by a preponderance of the evidence. MetLife is (and was) entitled to rescind the Policy. The Court declares that Dr. Liebowitz has no right, title, or interest in the Policy. This resolves both MetLife's Complaint (Doc. #1) and Dr. Liebowitz's Counterclaim I (Doc. #58, p. 18), which sought reinstatement of the Policy.

Dr. Liebowitz's Counterclaim II seeks a payment of disability benefits under the Policy. Because the Court determines that Dr. Liebowitz is not entitled to enforce the Policy, Dr. Liebowitz cannot seek relief under the Policy. Counterclaim II is dismissed with prejudice.

30

Accordingly, it is now

**ORDERED:**

1. The Court finds that MetLife has sustained its burden of proof as to the Complaint (Doc. #1) seeking recission of the disability insurance Policy.  The Court finds that Dr. Liebowitz has not sustained his burden on his Counterclaim I (Doc. #58) seeking a declaration that the Policy is reinstated.

2. MetLife is entitled to judgment in its favor on the Complaint (Doc. #1), Counterclaim I (Doc. #58), and Dr. Liebowitz's First through Eighth Affirmative Defenses (Doc. #58).

3. Counterclaim II (Doc. #58) is dismissed with prejudice.

4. The Clerk shall enter judgment accordingly and close the case.

**DONE and ORDERED** at Fort Myers, Florida, this __21st__ day of March, 2022.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

31